IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| LYNETTE A. DiBRITO, | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO 1:08-CV-2308 |
| v. | : | |
| | : | Honorable Christopher C. Conner |
| HARRISBURG AREA COMMUNITY | : | |
| COLLEGE, | : | |
| | : | |
| Defendant | : | |

_____

## JOINT CASE MANAGEMENT PLAN

**1.    Principal Issues**

1.10   Separately for each party, please give a statement summarizing this case:

<u>By Plaintiff</u>:

Plaintiff is Lynette DeBrito, presently the Associate Dean of Student Life at the Harrisburg Campus of Harrisburg Area Community College ("HACC"). She was hired on February 25, 2002, having come from an administrative capacity at Minnesota State University. From 2002 until 2006, DeBrito enjoyed increasing responsibility; began to work on an Ed.D at Temple University with the President of HACC as her mentor; and was a rising star at the institution.

In the spring of 2006, the Vice President of Student Affairs and Enrollment Services, Chip Jackson, announced his retirement, and Edna Baehre, President of HACC, decided to put the search for a new Vice President on a fast track. Both those within the HACC community, as well as those outside, were able to apply. On May 25, 2006, HACC President Baehre met with DeBrito and asked her if she was planning to apply for this position. When DeBrito responded in the negative, Bahre asked if she would be willing to serve on the Search Committee which would interview candidates and make recommendations for the position. DeBrito agreed to do so.

Prior to this time, DeBrito had noticed an undercurrent of racial animus directed toward HACC employees of color by several management level personnel, including her then-supervisor, Maureen Kelly.. One of the individuals this was directed against was Subrina Taylor, a co-worker who would later apply for the vacant position of Vice President of Student Affairs and Enrollment Services.

Indeed, Taylor was the first candidate to be interviewed by the Search Committee. The Search Committee Chair, Vice President of Communications and College Development Nancy Rockey ("Rockey"), appeared late for the interview; was shuffling through papers and cleaning out her purse during the course of the interview; and had not made appropriate arrangements for the interview, which was being conducted by conference call. Nevertheless, at the next Search Committee Meeting, it was revealed that Subrina Taylor had a high score and while there were some limitations noted, a large majority of the Search Committee believed that she should be a finalist for the position. According to the application documents reviewed by DeBrito, Taylor was the most qualified individual for the position.

Rockey told the Search Committee members that she would compile discussion notes and lists of strengths/limitations for each candidate and that she would send them out to Search Committee members before submitting them to Dr. Baehre. However, she failed to do so. In fact, during a Search Committee meeting, Rockey criticized Taylor for "missing a lot of work" and not following through on details. She noted that Taylor had failed to complete a grant application which cost the college much money. In response, DeBrito reminded her that Taylor had been on medical leave.

Ultimately, Subrina Taylor was not selected for that position and subsequently left Harrisburg Area Community College and filed an E.E.O.C.

Complaint, <u>Subrina Taylor v. Harrisburg Area Community College</u>, EEOC Charge No. 530-2006-03707. DeBrito supported the position of Subrina Taylor in the referenced EEOC proceeding by submitting a witness statement detailing her belief that Taylor was not selected based upon discrimination due to her race. The day following the Search Committee meeting when Nancy Rockey made the remarks concerning Subrina Taylor, DeBrito met with Ronald Young, Vice President of Student and Academic Affairs, to express her concern about the injection of racial considerations into the process and to report the discriminatory remarks made by Rockey.

On August 7, 2006, DeBrito received a telephone call from the President of HACC, Edna Baehre, who requested that she come to Baehre's office to discuss some paperwork. This turned out to be a pretext, as Baehre threatened DeBrito, stating, "[y]ou had better be careful. … Someone on the Search Committee has breached confidentiality and shared things with Subrina Taylor and all fingers are pointing at you. … There are serious conse  quences for whoever did this. … You had better be careful."

Since this date, DeBrito's daily existence at HACC has become a living nightmare, as the institution has engaged in a course of retaliatory actions, including, <u>inter alia</u>, the loss of sixty (60%) percent of her prior duties. This course of conduct has continued to the present date and especially intensified after her immediate supervisor – the successful candidate over Subrina Taylor – was formally dropped as a party defendant in the present lawsuit. The retaliatory actions have been amplified by routine harassment by her supervisor, including <u>inter alia</u>, confronting DeBrito concerning purported rumors that she would deliberately ruin the Spring 2008 Commencement activities. Such actions, more fully detailed in the Complaint, constitute adverse or tangible employment actions cognizable under Title VII of the Civil Rights Act of 1964 because they represent a materially adverse change in the terms and conditions of DeBrito's employment.

<u>By Defendant</u>:

Defendant Harrisburg Area Community College ("HACC") is Pennsylvania's first community college. HACC has a student enrollment of approximately 18,000 at four major campuses and numerous offsite centers throughout south central Pennsylvania. In 2002, HACC hired Plaintiff Lynette DiBrito as the Associate Dean of Student Services. HACC continues to employ Plaintiff to this day. HACC has increased Plaintiff's salary by 62.75% over the past seven years, and Plaintiff's supervisors have provided her with numerous positive performance evaluations. Nevertheless, Plaintiff alleges that Defendant retaliated against her for engaging in activity protected under Title VII of the Civil Rights Act of 1964 ("Title VII").

Plaintiff's allegations stem from the Summer of 2006 when HACC's President, Dr. Edna Baehre, requested that Plaintiff serve on a committee to select a new Vice President of Student Affairs and Enrollment Management. Ultimately, the committee chose Dr. Winifred Black for that position. One of the unsuccessful finalists, Subrina Taylor, then filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), claiming that she was passed over based on her race. Ms. Taylor, however, abandoned her charge before it ever materialized into a lawsuit.

Plaintiff claims that she supported Ms. Taylor' EEOC charge and that HACC has engaged in a retaliatory campaign against Plaintiff by downgrading her job title and reducing her job responsibilities.

Plaintiff's retaliation claim, however, overlooks several key facts that place HACC's actions in their appropriate context. For example, from the time that Plaintiff claims she engaged in protected conduct during the summer of 2006 through today, HACC has increased Plaintiff's salary by 17.1% (from $61,886 to $72,506). Second, less than two weeks after Plaintiff notified HACC of her alleged protected activity, HACC granted Plaintiff's request for a sabbatical to complete her Ph. D. dissertation, even though HACC does not normally permit administrative staff like Plaintiff to take sabbaticals. Although Plaintiff never finished her dissertation, HACC never disciplined her for this.

Similarly, Plaintiff's claim that her position has been downgraded constitutes a gross exaggeration. While it is true that HACC recently changed Plaintiff's job title from Associate Dean of Student Services to Senior Campus Director, this change took place in the context of a College-wide re-organization process that involved, among other matters, centralizing certain administrative positions at particular campuses that were previously performed on a College-wide

2553049-1

basis.  HACC did this for many other employees, including Dr. Black, Plaintiff's supervisor and one of the individuals whom Plaintiff claims has retaliated against her.

Although Plaintiff emphasizes that she no longer holds the title "Associate Dean," that elevates form over substance to a perverse degree.  Plaintiff never held an academic position with HACC and, therefore, the use of the term "dean" in her title was inappropriate.  Furthermore, Plaintiff's new title as Senior Campus Director places her in the same "leadership band" under the new organizational structure as those holding the title of Associate Dean in the academic faculty. While Plaintiff claims HACC "stripped" certain administrative duties from her, she neglects to mention that she requested re-assignment of these duties, claiming that she was overwhelmed.

Perhaps most importantly, the change in Plaintiff's title under the College's re-organization process, which occurred in September of 2007, resulted in an immediate increase in Plaintiff's salary of 4.3%, even though Plaintiff's salary had been raised by 4% only two months prior.  (HACC raised Plaintiff's salary once again during annual performance evaluations in June of 2008, this time by 8%).  In the end, the reorganization process resulted in Plaintiff's duties becoming more centralized at the main Harrisburg campus, she no longer has to perform certain administrative functions that she found overwhelming and her salary has been increased.  Suffced to say, these actions, which all occurred during the same period during which Plaintiff claims HACC retaliated against her, render legally untenable her claim of Title VII retaliation.

Likewise, Plaintiff cannot prove any damages resulting from any alleged retaliation.  Plaintiff has not been harmed economically during the period she claims to have been the victim of retaliation.  To the contrary, she has received several salary adjustments, which exceed by more than $5,000 the maximum annual performance-based salary increases authorized by HACC's Board of Trustees during this period.  Furthermore, any emotional distress that Plaintiff claims to have suffered is far more likely attributable to Plaintiff's unstable domestic situation.

The principal *factual* issues that the parties *dispute* are:

1.11.1     Whether Plaintiff expressed concerns to Ron Young in late July 2006 about "racial considerations" during the selection of the new Vice President of Student Affairs and Enrollment Services.

1.11.2     Whether Plaintiff has been "declassified in terms of salary to a lower level."

1.11.3     Whether Plaintiff has suffered any lost wages or other monetary loss.

1.11.4     Whether Plaintiff has suffered emotional damages as a result of Defendant's alleged actions.

1.11.5     Whether the President of Harrisburg Area Community College, Edna Baehre, threatened DeBrito on August 7, 2006, during a conversation in her [Baehre's] office, as a result of the Subrina Taylor matter.

1.11.6     Whether actions taken by Harrisburg Area Community College with regard to DeBrito were directed by Edna Baehre as a result of the Subrina Taylor matter.

The principal *factual* issues that the parties *agree* upon are:

1.12.1     HACC hired Plaintiff in February of 2002.

1.12.2     Plaintiff is currently employed by HACC.

1.12.3     In the summer of 2006, Plaintiff participated on a search committee to select a new Vice President of Student Affairs and Enrollment Services.

1.12.4     Ms. Taylor filed a charge of discrimination against HACC with the EEOC when she was passed over for the position of Dean of Student Services and Enrollment Management.

1.12.5     In February of 2007, based on Dr. Black's recommendation, HACC approved Plaintiff's requested sabbatical.

1.12.6     Plaintiff filed a charge of retaliation with the EEOC on March 13, 2007.

1.12.7     HACC did not receive notice of Plaintiff's EEOC charge until May 23, 2007.

1.12.8    In July of 2007, HACC increased Plaintiff's salary from $61,866 to $64,341.

1.12.9    On September 6, 2007, Plaintiff's salary increased from $64,341 to $67,136.

1.12.11    On July 1, 2008, Plaintiff's salary increased from $67,136 to $72,506.

1.30  The principal *legal* issues that the parties *dispute* are:

1.31.1    Whether Plaintiff engaged in conduct protected under Title VII.

1.31.2    Whether HACC took any adverse actions against Plaintiff, within the meaning of Title VII of the Civil Rights Act of 1964.

1.31.3    Whether a causal connection exists between any protected conduct Plaintiff may have engaged in and any adverse action she claims to have suffered.

1.31.4    Whether there is a legitimate, non-retaliatory justification for any adverse action HACC may have taken against Plaintiff.

1.31.9    Whether Plaintiff is entitled to compensatory and/or punitive damages.

The principal *legal* issues that the parties *agree* upon are:

1.41.1    HACC is an "employer" as that term is used in Title VII.

1.41.2.    Plaintiff is an "employee" as that term is used in Title VII.

1.41.3 Any compensatory and/or punitive damages that Plaintiff might recover in this suit would be capped at a total of $300,000.

1.50    Identify any unresolved issues as to service of process, personal jurisdiction, subject matter jurisdiction, or venue:

By all Parties: None.

1.60    Identify any named parties that have not yet been served:

By all parties: None.

1.70    Identify any additional parties that the parties intend to join:

By all parties: None.

1.80    Identify any additional claims that the parties intend to add:

By all parties: None.

**2.0    Alternate Dispute Resolution ("ADR")**

2.10    Identify any ADR procedure to which the parties have agreed to use.

The parties have not agreed to utilize ADR at this time.

ADR procedure:                    _____

Date ADR to be commenced:    _____

Date ADR to be completed:      _____

2.20    If the parties have been unable to agree on an ADR procedure, but one or more parties believe that the case is appropriate for such a procedure, identify the party or parties that recommend ADR and the specific ADR process recommended: **N/A**

2.30    If all parties share the view that no ADR procedure should be used in this case, set forth the basis for that view:

By all parties: At this time, the parties do not believe that this is an appropriate case for ADR.

**3.0    Consent to Jurisdiction by a Magistrate Judge**

Indicate whether all parties agree, pursuant to 28 U.S.C. § 636(c)(1), to have a magistrate judge preside as the judge of the case with appeal lying to the United States Court of Appeals for the Third Circuit:

<u>By all parties</u>: The parties do not agree to jurisdiction by a Magistrate Judge.

If the parties agree to proceed before a magistrate judge, please indicate below which location is desired for the proceedings:

> **_____** Scranton
> **_____** Wilkes-Barre
> **_____** Harrisburg

**4.0    Disclosures**

4.100 Separately, for each party, list by *name and title/position* each person whose identity has been disclosed.

4.101 Disclosed by <u>the Plaintiff</u>:

4.101.1 Plaintiff has not yet disclosed any individuals, but will do so as required under the Federal Rules of Civil Procedure.
4.101.2
4.101.3
4.101.4
4.101.5
4.101.6
4.101.7

4.102 Disclosed by <u>Defendants</u>:

4.102.1    Dr. Edna Baehre - President
4.102.2    Dr. Winifred Black - Vice President of Student Affairs
4.102.3    Meredith Tulli, Executive Director of Human Resources
4.102.4    Ronald Young - Vice President of Academic

Affairs and Enrollment Management

    4.102.5      HACC's custodian of records

4.200 Separately, for each party, describe by *categories* the documents that have been disclosed or produced through formal discovery, indicating which categories relate (even if not exclusively) to damages:

    4.201 Categories of documents disclosed by the <u>Plaintiff</u>:

        4.201.1 Plaintiff has not yet disclosed any documents, but will do so as required by the Federal Rules of Civil Procedure.

    4.202 Categories of documents disclosed by <u>Defendant</u>:

        4.202.1      Defendant's personnel file for Plaintiff, which relate partially to Plaintiff's alleged damages.

        4.202.2      HACC's employment policies.

    Defendant reserves the right to add to the list as discovery progresses and facts are learned.

4.300 *Additional Document Disclosures*: Separately, for each party, describe each additional category of documents that will be disclosed without imposing on other counsel the burden of serving a formal request for production of documents.

    4.301 Additional categories of documents the <u>Plaintiff</u> will disclose:

        4.301.1      All documents in Plaintiff's possession.

    4.302 Additional categories of documents <u>Defendant</u> will disclose:

        4.302.1      None at this time.

4.400 Separately, for each party who claims an entitlement to damages or an offset, set forth the computation of the damages or the offset:

4.401 Plaintiff's calculation of damages:

Plaintiff has suffered emotional damages, including aggravation of pre-existing medical conditions, brought on by the stress of Defendant's actions in an amount to be determined pursuant to a jury trial. Plaintiff is entitled to an award of punitive damages, as determined by a jury, as a result of the actions of Defendants. Plaintiff has suffered economic damages in an amount to be established at a later date.

4.402 Defendants' calculation of offset:

Defendant is not liable to Plaintiff. Therefore, it computes the damages owed to Plaintiff at $0. Moreover, Defendant demands strict proof at trial of any claim for damages, as well as proof that Plaintiff appropriately mitigated any alleged damages.

4.403 Counter-claimant/third party claimant's calculation of damages:

Not applicable.

## 5.0    Motions

Identify any motion(s) whose early resolution would *likely* have a significant effect either on the scope of discovery or other aspects of the litigation:

By Plaintiff: **None at this time.**

By Defendant:  None at this time.

## 6.0    Discovery

6.100 Briefly describe any discovery that has been completed or is in progress:

By Plaintiff:   None at this time.

By Defendants:   Defendant will provide its Rule 26(a)(1) initial disclosures and serve its initial discovery requests on or before March 24, 2009.

6.200  Describe any *discovery* that all parties *agree* should be conducted, indicating for each discovery undertaking its purpose or what kinds of information will be developed through it (e.g. "plaintiff will depose Mr. Jones, defendant's controller, to learn what defendant's revenue recognition policies were and how they were applied to the kinds of contracts in this case"):

By All Parties: The parties anticipate that they will exchange written discovery and complete the depositions of the named parties and other fact witnesses and expert witnesses (if any) identified in discovery. Defendant may choose to depose Plaintiff's medical provider(s) and experts as they are identified, including mental health care providers and treating physicians.  Defendant may also request that Plaintiff submit to an independent medical exam.

6.300  Describe any *discovery* that one or more parties want(s) to conduct but *to which another party objects*, indicating for each such discovery undertaking its purpose or what kinds of information would be developed through it.

By both parties: None.

6.400  Identify any *subject area limitations on discovery* that one or more parties would like imposed, at the first stage of or throughout the litigation.

By Plaintiff: Plaintiff does not agree with any limitation on discovery, including the selection process for the Vice President position.

By Defendant: In depth discovery regarding the selection process for the Vice President position would be inappropriate.  Although HACC could prove that the decision did not involve any discrimination, the issue of whether Ms. Taylor was subjected to discrimination is

irrelevant to the contested issues in this case, which are whether Plaintiff engaged in protected conduct, whether HACC retaliated against Plaintiff as a result of any protected conduct and whether Plaintiff suffered any damages as a result of any alleged retaliation.

6.500 For each of the following discovery tools, *recommend the per-party or per-side limitation* (specify a number) that should be fixed, subject to later modification by stipulation or court order on an appropriate showing (where the parties cannot agree, set forth separately the limits recommended by plaintiff(s) and by defendant(s):

   6.501 Depositions (excluding experts) to be taken by:

   Plaintiff: **10**          Defendant: **10**

   6.502 Interrogatories to be served by:

   Plaintiff: **25**          Defendant: **25**

   6.503 Document Production Requests to be served by:

   Plaintiff: **50**          Defendant: **50**

   6.504 Requests for Admission to be served by:

   Plaintiff: **25**          Defendant: **25**

6.600 All discovery commenced in time to be completed by:

   By all parties:  On or before September 30, 2009.

6.700 Reports from retained experts due:

   Plaintiff:     On or before July 31, 2009.

   Defendant:   On or before August 31, 2009.

6.800  Supplementation of discovery due from either party no later than:

   On or before September 15, 2009.

**7.0    Protective Order**

Please find attached the parties' agreed upon protective order.

**8.0    Certification of Settlement Authority (All Parties Shall Complete the Certification)**

I hereby certify that the following individual(s) have settlement authority:

By Plaintiff:

      Lynette DeBrito
      5475 Eagles Ridge Lane
      Enola, PA 17025

By Defendants:

      Dr. Edna Baehre
      President
      HACC
      One HACC Drive
      Harrisburg, PA 17110

**9.0    Scheduling**

9.1    This case may be appropriate for trial in approximately:

      _____    240 Days from the filing of the action in this Court
      _____    365 Days from the filing of the action in this Court
      \_\_400\_\_    Days from the filing of the action in this Court

9.2    Suggested Date for Trial:

      By all parties:  The Court's February of 2010 jury trial pool.

9.3    Suggested Date for the Final Pretrial Conference:

By all parties:  The week of January 18-22, 2010.

9.4     Final date for joining additional parties:

By all parties:  April 9, 2009.

9.5     Final date for amending pleadings:

By Plaintiff:  April 9, 2009.

By Defendant:  April 29, 2009.

9.6     All potentially dispositive motions should be filed by:

On or before October 14, 2009.

## 10.0   Other Matters

Make any other suggestions for the case development process, settlement or trial that may be useful or necessary to the efficient and just resolution of this dispute.

By all Parties: The parties agree that discoverable electronically stored information, in particular emails, will be produced in paper form.  Plaintiff agrees that Defendant need not undertake any additional efforts to preserve back up tapes or to make images of email accounts based on Defendant's efforts to preserve emails in their paper form.

## 11.0   Identification of Lead Counsel

Identify by name, address and telephone number lead counsel for each party:

By Plaintiff:

John M. Kerr, Esquire
Law Office of  John M. Kerr
5020 Ritter Road, Suite 109
Mechanicsburg, PA 17055
(717) 766-4008

By Defendant:

Jennifer L. Craighead, Esquire
Barley Snyder, LLC
126 East King Street
Lancaster, PA 17602
(717) 299-5201

Date: March 19, 2009        By:    _/s/ John M. Kerr_____
                                   **JOHN KERR, ESQUIRE**
                                   **PA BAR ID: 26414      ECF: Yes**

                            By:    _____
                                   **JENNIFER L. CRAIGHEAD, ESQUIRE**
                                   **PA BAR ID: 69105      ECF:  Yes**

2553049-1